UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHA US LLC, a New York
limited liability company; MONROE
MI SNF MANAGEMENT LLC, a
Michigan limited liability company;
ADRIAN MI SNF MANAGEMENT LLC,
a Michigan limited liability company; and
HASTINGS MI SNF MANAGEMENT LLC,
a Michigan limited liability company,

                                                              Case No. 21-12573

         Plaintiffs,

                                                              Hon. George Caram Steeh

      v.

BENCHMARK HEALTHCARE
CONSULTANTS LLC, an Indiana limited
liability company; STRAWBERRY FIELDS
REIT LLC, an Indiana limited liability
company; GUBIN ENTERPRISES LIMITED
PARTNERSHIP, an Indiana limited partnership;
JEFF SAX, an individual; and MOISHE
GUBIN, an individual,

         Defendants.
_____/

OPINION AND ORDER GRANTING
<u>DEFENDANTS' MOTIONS TO DISMISS (ECF NOS. 13, 15)</u>

       This case arises out of an elongated and complicated receivership

action pending before this court. *See* Case No. 16-14559 (E.D Mich.).

Plaintiff Micha US LLC purchased three nursing homes out of the

Receivership Estate. Those facilities, which are also plaintiffs here, are now

known as Monroe MI SNF Management LLC, Adrian MI SNF Management

LLC, and Hastings MI SNF Management LLC. Defendant Benchmark

Healthcare Consultants LLC managed the nursing homes while they were

in receivership. Defendant Jeff Sax is the principal of Benchmark, and

Defendants Strawberry Fields REIT LLC, Gubin Enterprises Limited

Partnership, and Moishe Gubin are alleged to be affiliated with Benchmark.

Having purchased three financially struggling nursing homes on the

brink of closure, Micha now seeks to hold Benchmark and its affiliates

accountable for their deficiencies, which Micha alleges are the result of

Benchmark's mismanagement. As an agent of the Receiver, however,

Benchmark is entitled to quasi-judicial immunity for its efforts to manage

the nursing homes in receivership. Accordingly, the court will dismiss

Plaintiffs' complaint.

<u>BACKGROUND FACTS</u>

The receivership action related to this case largely concluded in

2019, and many of the background facts recited here are derived from that

record. *See* Case No. 16-14459, ECF No. 177. In that case, the court

entered a consent order placing four skilled nursing facilities under

receivership. *Id.* at ECF No. 7. The action was brought by MW Capital, the

secured creditor and landlord of the facilities. The nursing homes were

known as Magnum Health and Rehab of Monroe, Saginaw, Adrian, and Hastings. As set forth in the consent order, the court appointed Trigild, Inc., as the Receiver. The Receiver retained a management company, Benchmark, to operate the nursing homes while they were marketed for sale.

Benchmark first operated the nursing homes with the intent of purchasing them relatively quickly. *See id.,* ECF No. 13. The Receiver filed a motion to establish sale procedures on May 9, 2017, about five months after its appointment. However, the sale was complicated by the fact that nursing homes did not own the real property where they were located; the property was owned by MI Property Holdings, LLC. The members of MI Property Holdings included Abraham Shaulson (President of the plaintiff, MW Capital) and MI Rosdev Property, L.P. ("Rosdev"), an affiliate of Micha. As a result of an internal business dispute between MI Property members, Rosdev objected to selling the property to Benchmark and its affiliates, and apparently offered to buy the property itself. Case No. 16-14459, ECF No. 19. Based upon this objection, the Receiver withdrew its sale motion. *Id.* at ECF No. 34.

Meanwhile, MW Capital/Shaulson and Rosdev were pursuing a deal regarding the real estate. They represented to the Receiver that a deal was

"imminent," yet negotiations dragged on. *Id.*, ECF No. 39. At the same time, the Receivership Estate was in "great distress with respect to cash flows" and MW Capital declined to provide funding to maintain operations. *Id.* The nursing homes had difficulty paying critical vendors, providing benefits to staff, maintaining the buildings, and providing therapeutic services to residents. Lacking a source of funding or a purchase agreement, the Receiver filed a motion to close the nursing homes on March 13, 2018.[1] *Id.* However, the Receiver subsequently obtained interim temporary funding, apparently from Rosdev, and withdrew the closure motion on April 27, 2018. *Id.*, ECF No. 46.

Concerned that the residents' well-being and safety were being impacted by the facilities' financial crisis, the Michigan Department of Health and Human Services sought an emergency status conference with the court on May 15, 2018. *Id.* at ECF No. 47. After the status conference, the Receiver filed a motion for an expedited, private sale of the receivership assets on May 25, 2018. The Receiver noted that Benchmark and its affiliates had withdrawn its offer to purchase the facilities after the objection

---

[1] In light of the nature of the facilities as providers of necessary care under Medicare and Medicaid, their potential closure implicated many stakeholders, including the Michigan Department of Health and Human Services, the State Long Term Care Ombudsman Office, the Centers for Medicare and Medicaid Services, and the residents and their families. *See* Case No. 16-14559, ECF No. 42.

by Rosdev. Although the Receiver continued to market the assets for sale, it was unable to obtain an offer from any third party. Case No. 16-14459, ECF No. 59. The Receiver proposed that the secured creditor, MW Capital, would purchase the facilities through a credit bid, and then transfer its interest to Micha US LLC, an affiliate of Rosdev. *Id.*

After objections were lodged by various stakeholders, the court held a hearing and urged the parties to resolve the objections in a consensual manner. On June 6, 2018, the Receiver reported that the parties had reached an impasse and filed a motion to close the facilities in the event a deal was not reached. *Id.*, ECF No. 68. A hearing and settlement conference before Judge Bernard Friedman was held on June 13, 2018. After several hours, an agreement was reached and the court entered an order approving the sale of the receivership assets to Micha. *Id.,* ECF No. 81.

Specifically, MW Capital assigned its debt to Micha, who purchased the assets through a credit bid of approximately $3,500,000. *Id.* Upon entry of the sale order, Micha agreed to fund $500,000 to the Receivership Estate to satisfy urgent financial needs, prioritizing payroll, payment of contractors, and employee benefits, among others. *Id.* at ¶¶ 10, 12. Micha also agreed to pay the administrative expenses of the Receivership,

including Benchmark's fee, which had accrued on a monthly basis, but for which the Receivership Estate lacked the funds to pay. *See id.* at ¶¶ 1, 23. Indeed, Benchmark managed the nursing homes for eighteen months without payment. *See id.,* ECF No. 96, ECF No. 132 at PageID 4088.

Dissatisfied with Benchmark's operation of the nursing homes, Micha resisted paying Benchmark's management fee. Micha alleged that Benchmark's performance was substandard and that it was in breach of its management agreements with the Receiver. The Receiver, however, disclaimed any issue with Benchmark's performance and indicated that Benchmark was entitled to payment:

> The receiver does not have any claims of default or claims of breach of the management agreement. I have made that position very clear to both Mr. August and Mr. Shapiro that we believe the services were rendered. We believe the payable that was filed before the Court, and that is before the Court today, is valid, and, you know, to -- I'm happy to, you know, go over some of the complaints, if necessary, but I feel from day one the receiver, as well as the management company, was put in a very difficult position with regards to lack of funding, and I think ultimately that lack of funding bled over to all of the other various issues and complaints that can be thrust upon us. It's very hard to get services and use vendors when you don't pay any of them. So I think it's a little bit difficult to criticize Benchmark without recognizing the extreme lack of funding and the difficulty of the circumstances. So that's my only position on that. I think the payable is valid.

Case No. 16-14459, ECF No. 148 at PageID 4915-16.

-6-

The court granted Benchmark's motion for payment, ruling that, as a non-party to the agreements between the Receiver and Benchmark, Micha did not have a legal basis to object to Benchmark's fee. *Id.* at ECF No. 131. The Sixth Circuit affirmed, agreeing with this court's conclusion that Micha did not have grounds to object to paying the fee. *MW Cap. Funding, Inc. v. Magnum Health & Rehab of Monroe LLC*, 817 Fed. Appx. 90, 94 (6th Cir. 2020). The court further noted,

> MICHA represented in the Sale Order that it "had an opportunity to inspect and examine" the receivership assets, and "relied solely upon its own independent review, investigation and/or inspection of any documents and the premises" in reaching the purchase price. If, as MICHA alleges, Benchmark's substandard management during the receivership decreased the value of the facilities, that diminished value should have been reflected in the purchase price.

*Id.*

While the payment issue was on appeal, Micha sought leave to sue Benchmark for conversion, unjust enrichment, and gross negligence. The court denied Micha's motion without prejudice, pending the Sixth Circuit's decision. In light of the dispute between Micha and Benchmark, the court also declined to discharge the Receiver, although it approved the Receiver's final accounting.

Subsequently, on September 15, 2020, Micha and the new nursing home entities filed suit against Benchmark, its representative Jeff Sax, and Benchmark's affiliates, Moishe Gubin, Gubin Enterprises Limited Partnership, and Strawberry Fields REIT, LLC, in state court, alleging conversion, unjust enrichment and gross negligence. Because Plaintiffs did not seek leave of this court before filing suit, the court enjoined them from continuing the state court action. Case No. 16-14459, ECF No. 200. The parties then filed a joint motion to allow Plaintiffs to file their complaint, which the court granted. *Id.,* ECF No. 204.

The complaint takes issue with Benchmark's performance in managing the nursing homes. Plaintiffs allege that Benchmark and its affiliates schemed to "loot the receivership assets for their own benefit and to depress the value of the receivership assets so that Defendants could acquire the Receivership Assets for pennies on the dollar." ECF No. 1 at ¶ 21. Plaintiffs contend that once Benchmark and its affiliates decided not to purchase the nursing homes, Benchmark "neglected its duties as operational manager of the Magnum SNFs and allowed the Magnum SNFs to deteriorate to the point where the Receiver determined it was no longer viable to continue to operate the Magnum SNFs." *Id.* at ¶ 25.

Plaintiffs further allege that Benchmark "stole, embezzled or converted funds paid into the receivership by Micha for the benefit of the [nursing homes]" by using the funds to pay the salaries of certain regional Benchmark employees. *Id.* at ¶ 69. This allegation underlies Micha's claims for statutory and common law conversion and unjust enrichment. *Id.* at ¶¶ 68-76. Micha also alleges a claim of gross negligence, based upon Benchmark's alleged failure to properly manage the facilities and maintain them in operable condition. *Id.* at ¶¶ 78-80.

## LAW AND ANALYSIS

### I.   Standard of Review

Defendants seek dismissal of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, Plaintiffs must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Defendants raise several grounds for dismissal, including res judicata, waiver, immunity, and failure to state a claim. Because the court finds that Plaintiffs' complaint is barred by immunity and that they have also failed to state a claim, it need not address the other grounds raised by Defendants.

II.     Claims against Benchmark Defendants

In the underlying action, the Receiver's duties included maintaining, operating, and marketing the nursing homes for sale. Case No. 16-14459, ECF No. 7. The consent order appointing the Receiver provided that Benchmark "shall be responsible for all activities necessary to operate the facilities and keep them in operable condition. . . ." *Id.* at PageID 230. The order further provides that the "Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or failure to comply with this Court's orders." *Id.* at PageID 242.

This limitation of liability is consistent with the general rule that receivers and their agents are entitled to quasi-judicial immunity for actions taken within the scope of their authority as officers of the court. *See, e.g., Trinh v. Fineman*, 9 F.4th 235, 238 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1364 (2022) ("[I]n recognition of the receiver's relationship to the court, our sister circuits have concluded that a court-appointed receiver is entitled to quasi-judicial immunity.") (citing cases); *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021) (receiver and law firm entitled to immunity); *Davis v.*

-11-

*Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) ("Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and are within the scope of the authority granted to the receiver."); *Smith v. Martin*, 542 F.2d 688, 691 (6th Cir. 1976) (no personal liability for receiver who did not act "either outside their authority under court order or maliciously or corruptly").

As an agent of the Receiver, Benchmark is entitled to quasi-judicial immunity for actions taken in carrying out the court's order to operate the nursing homes. This immunity extends to Plaintiffs' claims of negligence, conversion, and unjust enrichment. In order to overcome this immunity, Plaintiffs must plausibly allege "gross negligence, gross or willful misconduct, malicious acts and/or failure to comply with this Court's orders." Case No. 16-14459, ECF No. 7 at PageID 242.

A. <u>Gross Negligence</u>

As Defendants point out, gross negligence is the heightened standard that must be pleaded to overcome Benchmark's immunity, rather than an independent claim. The Sixth Circuit has explained that the concept of gross negligence has "survived in certain Michigan statutes . . . in which certain actors are immune from liability for ordinary negligence but may be

liable for conduct reaching a grossly negligent level." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009). These statutes include the Government Tort Liability Act and Emergency Medical Services Act, which provide immunity to government officials and emergency medical providers. "In this context, 'gross negligence' means 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Id.* (citation omitted). *See generally Jennings v. Southwood*, 446 Mich. 125 (1994). Gross negligence also survives in cases involving contractual waivers of liability, which "insulate against ordinary negligence, but not gross negligence." *Xu v. Gay*, 257 Mich. App. 263, 269 (2003).

Plaintiffs have failed to sufficiently allege a claim of gross negligence against Benchmark, for several reasons. First, Plaintiffs' allegations are at most in the realm of ordinary negligence and do not rise to the level of gross negligence. *See* ECF No. 1 at ¶¶ 25, 50 ("Benchmark neglected its duties as operational manager of the Magnum SNFs and allowed the Magnum SNFs to deteriorate. . . ."). Plaintiffs allege that Benchmark caused the nursing homes to "fail to pay critical vendors," "incur unnecessary staffing and other expenses," "miss opportunities to recoup provider taxes," ignore "structural issues such as leaking roofs," fail to make other necessary repairs, discontinue employee health care benefits,

discontinue physical, occupational, and speech therapy for residents, and cause a 35 percent decline in occupancy. ECF No. 1 at ¶ 29. These actions were taken within the scope of Benchmark's authority, as delegated by the court, to conduct "all activities necessary to operate the facilities." Plaintiffs' allegations do not involve "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

Second, and perhaps more fundamentally, Plaintiffs' allegations involve a breach of a contractual duty and are not cognizable in tort. A contractual duty "arises from society's interest in the performance of promises," whereas "tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident." *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 521, 486 N.W.2d 612, 615 (1992) (citation omitted). "[T]ort law is a superfluous and inapt tool for resolving purely commercial disputes." *Id.* (citation omitted). *See also Hart v. Ludwig*, 347 Mich. 559, 563 (1956).

In order to state a negligence or gross negligence claim, Plaintiffs must allege that Benchmark owed them a duty. *Grifo & Co., PLLC v. Cloud X Partners Holdings, LLC*, 485 F. Supp.3d 885, 900 (E.D. Mich. 2020) (citing *Smith v. Jones*, 246 Mich. App. 270, 274 (2001)). Plaintiffs allege

that "Defendants owed a duty to the Magnum SNFs to manage the facilities and to maintain them in operable condition." ECF No 1 at ¶ 78. This duty is imposed by the court's order and Benchmark's contract with the Receiver.

Michigan law does not, however, recognize a cause of action in tort for a breach of a contractual obligation. *See Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 85 (1997). Rather, there must be a duty that is independent of the contract. No tort liability arises "for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made." *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157, 166 (2011) (citation omitted). The threshold question is "whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort." *Id.* at 171.

Plaintiffs have not identified such a duty here. Benchmark's duty to manage the facilities arises solely from its contract with the Receiver, as authorized by the court's order. There is no independent duty, outside of the contract, that Benchmark had to operate the facilities. *See Rinaldo's*, 454 Mich. at 85 ("While plaintiff's allegations arguably make out a claim for 'negligent performance' of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege

-15-

violation of an independent legal duty distinct from the duties arising out of the contractual relationship.").

Further, to recover on a negligence theory, Plaintiffs must allege a present *physical* injury. *Henry v. Dow Chem. Co.,* 473 Mich. 63, 75 (2005) ("We are not aware of any Michigan cases in which a plaintiff has recovered on a negligence theory without demonstrating some present physical injury."). Plaintiffs allege no physical personal or property injury here, but a financial injury. "A financial 'injury' is simply not a present physical injury, and thus not cognizable under our tort system." *Id.* at 78.

Plaintiffs have neither pleaded an absence of immunity by sufficiently alleging gross negligence, nor have they argued that Benchmark engaged in gross or willful misconduct or failed to comply with this court's orders.[2] *See generally Jennings*, 446 Mich. at 141 (noting that with regard to willful misconduct, "[t]he term 'wilful' requires a finding of an actual intent to harm"). Accordingly, the court finds that Benchmark is entitled to quasi-

---

[2] Had Benchmark failed to perform under the management agreements or failed to comply with the court's orders, it would have been the role of the Receiver to raise these issues with the court. But the Receiver specifically represented to the court that it did "not have any claims of default or claims of breach of the management agreement" against Benchmark. Case No. 16-14459, ECF No. 148 at PageID 4915-16.

judicial immunity from suit. This immunity extends to Benchmark's principal, Jeff Sax.[3]

B. Conversion

In addition to failing to overcome Benchmark's immunity, Plaintiffs have failed to state claims of common law or statutory conversion. Under Michigan common law, "conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Dunn v. Bennett*, 303 Mich. App. 767, 777-78 (2013) (citation omitted). The conversion of money is distinguished from the conversion of other property. "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111 (1999). For example, "[a]n action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr.*, Inc., 178 Mich. App. 570, 576 (1989). Michigan's conversion statute provides that a person may recover treble damages for "[a]nother person's stealing or embezzling property or

---

[3] In addition, the complaint is devoid of specific factual allegations plausibly alleging wrongdoing by Sax or a theory under which he would be personally liable for actions taken as an officer of Benchmark.

converting property to the other person's own use." M.C.L. § 600.2919a.

Section (1)(a) of the conversion statute is satisfied by demonstrating

common-law conversion, with the additional element that the conversion

was to the "other person's own use." *Aroma Wines & Equip, Inc. v.

Columbian Distribution Servs., Inc.*, 497 Mich. 337, 355-59 (2015).

As with a negligence claim, a party alleging the tort of conversion

must allege a violation of a legal duty that is separate and distinct from

contractual obligations. "[I]t is possible for a party's conduct to result in both

a breach of contract and a tort for common law conversion[,] so long as the

defendant's conduct constituted a breach of duty separate and distinct from

the breach of contract." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F.

Supp.3d 760, 788 (E.D. Mich. 2014) (citation omitted); *Oak St. Funding,

LLC v. Ingram*, 511 Fed. Appx. 413, 418 (6th Cir. 2013) ("Oak Street's

failure to allege a violation of a legal duty that is separate and distinct from

contractual obligations precludes it from bringing the conversion claims.").

Here, Plaintiffs allege that Benchmark converted funds intended to

benefit the nursing homes by using them to pay its regional employees.

Plaintiffs allege no separate and distinct duty aside from Benchmark's

contractual duty to manage the nursing homes. Whether certain individuals

should have been characterized as Benchmark employees or nursing

-18-

home employees is essentially a matter for the contract between Benchmark and the Receiver. This dispute, or Plaintiffs' disagreement with how Benchmark managed funds in the Receivership Estate, does not support a claim for conversion. *See Llewellyn-Jones*, 22 F. Supp.3d at 788-89 ("The gravamen of [the] complaint is that the defendants failed to manage the properties in conformity with the parties' contractual agreement and charged the plaintiffs for management services that were unnecessary or never completed. That does not state a cause of action for conversion.").

In addition, Plaintiffs fail to allege that Benchmark was obligated "to return the specific money entrusted to [its] care" or that Plaintiffs had an ownership interest in the funds Micha deposited into the Receivership Estate. *See Head*, 234 Mich. App. at 111; *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 229 (2019) ("With no ownership interest in the property sought, plaintiffs' conversion claims must fail."). For these reasons, dismissal of Plaintiffs' conversion claims is appropriate.

C. <u>Unjust Enrichment</u>

As discussed above, Plaintiffs' unjust enrichment claim is barred by immunity. Additionally, Plaintiffs cannot state a claim for unjust enrichment under the circumstances. Under the equitable doctrine of unjust enrichment, the law implies a contract "when one party receives a benefit

from another the retention of which would be inequitable." *Genesee Cty. Drain Comm'r v. Genesee Cty.*, 321 Mich. App. 74, 78 (2017), *aff'd sub nom. Wright v. Genesee Cty.*, 504 Mich. 410 (2019) (citations omitted). "A claim of unjust enrichment can arise when a party 'has and retains money or benefits which in justice and equity belong to another.' . . . The remedy for unjust enrichment is restitution." *Wright*, 504 Mich. at 418 (citation omitted).

Plaintiffs allege that Defendants were unjustly enriched because Benchmark treated certain employees as employees of the nursing homes and paid them with funds from the Receivership Estate. Plaintiffs fail to assert how any of the Defendants retained money that belonged to Micha or the facilities. *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 615 (E.D. Mich. 2015) ("Plaintiffs must plausibly allege that each Defendant was unjustly enriched *at plaintiff's expense.*") (emphasis in original). As set forth in the court's sale order, the funds Micha deposited into the Receivership Estate were a loan for which the Receiver was "authorized to issue receiver's certificates" which were "subordinate to all Receivership Expenses from the Appointment Date to the Discharge Date." Case No. 16-14459, ECF No. 81 at ¶ 10. This funding was to be "used by the Receiver to maintain adequate supplies for resident care, health and safety . . . ." *Id.*

at ¶ 12. To the extent Benchmark allegedly improperly used receivership assets to pay its employees, it is the Receivership Estate that was harmed, not Plaintiffs.[4] Further, Plaintiffs have not alleged how Benchmark retained a benefit at Plaintiffs' expense. *See Wright*, 504 Mich. at 422 (a claim for unjust enrichment "corrects for a benefit received by the defendant rather than compensating for the defendant's wrongful behavior"). Plaintiffs have failed to state a claim for unjust enrichment.

III.    Claims against Gubin Defendants

Plaintiffs have named Moishe Gubin, Gubin Enterprises Limited Partnership, and Strawberry Fields REIT Limited ("Gubin Defendants") as defendants, alleging that "upon information and belief," the Gubin Defendants, along with Sax, "orchestrated the Defendants' scheme – through the instrumentality of Benchmark – to loot the Receivership Assets for their own benefit and to depress the value of the Receivership Assets so that Defendants could acquire the Receivership Assets for pennies on the dollar." ECF No. 1 at ¶ 21. Plaintiffs allege that Benchmark was "under the direction and control of Defendants collectively." *Id.* at ¶ 68.

---

[4] Additionally, it would be the role of the Receiver to pursue such matters or bring them to the attention of the court. As noted, the Receiver has expressly disclaimed any breach of the management agreements or issue with Benchmark's performance and "believe[d] any complaints would strictly be related to the lack of funds available." Case No. 16-14459, ECF No. 142 at PageID 1400.

Because the court finds that Plaintiffs have not stated a claim against the Benchmark Defendants, it follows that there is no claim against the Gubin Defendants for allegedly directing Benchmark's activities. Moreover, the complaint generally refers to "Defendants" together, without differentiating between them, and is devoid of factual allegations regarding the individual Gubin Defendants. Plaintiffs allege no facts raising an inference that these defendants were grossly negligent, converted Plaintiffs' property, or were unjustly enriched. In this regard, Plaintiffs' complaint fails to meet the notice pleading standards of Rule 8. To meet this standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555. The court accepts "well-pleaded factual allegations" as true, but not "naked assertions," or "conclusory allegations or legal conclusions masquerading as factual allegations." *Id.* Here, Plaintiffs assert vague, conclusory allegations against the Gubin Defendants without articulating a plausible basis for liability.

CONCLUSION

Micha purchased the nursing homes at a fire-sale price, saving them
from certain closure, as no other buyers emerged during the Receivership.
As the court has previously observed, this negotiated outcome was
preferable for all of the stakeholders involved, especially the vulnerable
residents who would have been otherwise displaced. *See* Case No. 16-
14559, ECF No. 176. Under the circumstances, the condition of the nursing
homes should have been no surprise to Micha, who negotiated the sale
over an extended period, conducted due diligence, and purchased the
assets "'as is,' 'where is' and without representations or warranties of any
kind." *Id.,* ECF No. 81 at ¶¶ 21-22. The sale order itself noted "the extended
time period of this Receivership and the dire financial condition of the
Operating Receivership Assets." *Id.,* ECF No. 81 at ¶ 17. To the extent
Micha is dissatisfied with the bargain it struck, it has no legal grounds to
hold Benchmark or its affiliates responsible.

IT IS HEREBY ORDERED that Defendants' motions to dismiss (ECF
Nos. 13, 15) are GRANTED and Plaintiffs' complaint is DISMISSED.

Dated:  July 20, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE